**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE**

CIVIL ACTION NO. 05-76-DLB

RITA J. HAGY                                                                                         PLAINTIFF

vs.                              **MEMORANDUM OPINION & ORDER**

JO ANNE B. BARNHART, Commissioner
SOCIAL SECURITY ADMINISTRATION                                           DEFENDANT

******************

  Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security.  The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

  **I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

  Plaintiff Rita J. Hagy filed an application for Disabled Widow's Benefits on August 20, 2002.  Her application was denied initially and upon reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on October 9, 2003, in Hazard, Kentucky.  On December 3, 2003, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  The Appeals Council denied Plaintiff's request for further review by letter dated January 6, 2005.  The ALJ's decision, therefore, stands as the final decision of the Commissioner on Plaintiff's claim.

  Plaintiff, who was 51 years old at the time of the hearing, completed a ninth grade education and alleges an inability to work beginning in 1989 due to back problems, vision

1

problems, and pain and weakness in her left arm. At the hearing before the ALJ, Plaintiff also indicated that she was abused by her husband, who died on November 23, 1998, which makes it difficult for her to interact with or being around others; she experiences panic attacks on a daily basis; the pain in her lower back is a constant jabbing; she has pain in both arms, but it is worse in the right; she has difficulty concentrating; and can sit for approximately thirty minutes, stand for ten minutes, and lift ten pounds.

Having exhausted her administrative remedies, Plaintiff filed the instant action on March 9, 2005. The matter has culminated in cross motions for summary judgment, which are now ripe for the Court's review.

## II.  DISCUSSION

**A.    Overview of the Process**

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The Social Security Act provides for the payment of widow's insurance benefits to disabled widows whose husbands die fully insured. 42 U.S.C. §§ 402(e), 423(d)(2)(B).

Section 5103 of the Omnibus Budget Reconciliation Act (OBRA) of 1990 (Pub. L. 101-508) made the standard for determining disability in widows' claims the same as the standard applied to other Title II disability claims; that is, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months, and the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (d)(2).  The same five-step sequential evaluation process described in 20 C.F.R. § 404.1520 and applied in Title II cases is applied when adjudicating a widow's claim for disability benefits.

In order to be entitled to widow's benefits based on disability, the widow must also meet certain non-disability requirements in the statute.  For example, the widow must be between the ages of 50 and 60, and must have become disabled not later than 7 years after either the insured died or the widow was last entitled to mother's or father's benefits, whichever occurs later.  42 U.S.C. § 402(e)(1)(B), (e)(4); 20 C.F.R. §§ 404.335, 404.336.

**B.    The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 19).  At Steps 2 and 3, the ALJ found that Plaintiff's spondylolisthesis of the lumosacral spine and borderline intellectual functioning (BIF) constitute severe impairments, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (Tr. 21).  At Step 4, the ALJ found that Plaintiff possessed the residual functional capacity (RFC) to perform a significant range of medium work.

3

Specifically, the ALJ found that Plaintiff can lift/carry fifty pounds occasionally, twenty-five pounds frequently; occasionally climb, balance, stoop, kneel, and crouch; should avoid vibratory tools and equipment; and is restricted to simple, routine tasks. (Tr. 22).

Based upon these findings, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a maid/housekeeper. (Tr. 22). At Step 5, however, the ALJ found that there are a significant number of other jobs Plaintiff can perform despite her limitations, including bench assembler, and production/hand packer. (Tr. 23). This conclusion resulted from testimony by a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, past relevant work experience, and RFC.

**C.    Analysis**

Plaintiff raises several errors on appeal. First, she argues that the ALJ erred in concluding that her anxiety, panic attacks, and depression do not constitute severe impairments. Plaintiff also argues that, as a result, the ALJ failed to consider the combined effect of all her impairments. Third, Plaintiff argues that the ALJ failed to properly evaluate her subjective complaints of pain, because he did not consider the factors outlined in 20 C.F.R. § 404.1529(c)(3). Finally, Plaintiff contends that the Commissioner did not sustain her burden at Step 5 because the ALJ's RFC determination and hypothetical question to the VE did not accurately reflect her limitations. Relying on the Sixth Circuit's decision in *Howard v. Comm'r of Social Security*, 276 F.3d 235 (6th Cir. 2002), she argues that ALJ did not include his findings on the "B" criteria, i.e., that she is mildly limited in her activities of daily living, mild to moderately limited in her social functioning, and moderately limited

in her ability to maintain concentration, persistence, and pace, resulting in an inability to complete tasks in a timely manner.

In response, the Commissioner argues that substantial evidence supports the ALJ's conclusion that Plaintiff's mental impairments are not severe. Specifically, she notes that Plaintiff received only minimal treatment, and none of her physicians imposed any related functional limitations. The Commissioner also argues that the ALJ's discussion of all the medical evidence reveals that he considered Plaintiff's severe and non-severe impairments, both singly and in combination. According to the Commissioner, the ALJ's credibility determination should be afforded great deference by this Court, and is supported by Plaintiff's testimony regarding her activities of daily living, and her medical records, which contain little in the way of objective findings or restrictions. Finally, the Commissioner contends that the ALJ incorporated his findings on the "B" criteria into his RFC determination and hypothetical question by limiting Plaintiff to simple, routine tasks. For the reasons that follow, the Court concludes that the ALJ's decision is supported by substantial evidence and Plaintiff's alleged errors are without merit.

Turning to Plaintiff's first error - that the ALJ erred in evaluating the severity of her mental impairments - the Social Security Administration has implemented a special two-step procedure to guide ALJ's in determining whether a claimant is disabled due to a mental disorder. *See* 20 C.F.R. § 404.1520a. That procedure requires the ALJ first to evaluate a claimant's pertinent symptoms, signs, and laboratory findings to determine whether she has a medically determinable mental impairment(s). 20 C.F.R. § 404.1520a(b)(1). If the ALJ determines that the claimant has a medically determinable mental impairment(s), he must specify the symptoms, signs, and laboratory findings that

5

substantiate the presence of the impairment(s), and document these findings in his written decision. *Id*. The procedure then requires the ALJ to rate the degree of functional limitation resulting from the impairment(s) in four broad areas: 1) activities of daily living, 2) social functioning, 3) concentration, persistence, or pace, and 4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). Only then can the ALJ make a determination regarding the severity of the alleged impairment(s).[1] Finally, the regulations contain an unambiguous procedural requirement:

> At the administrative law judge hearing and Appeals Council levels, the written decision issued by the administrative law judge or Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(2).

Without regard to this framework, Plaintiff notes that the Sixth Circuit has generally held that the Step 2 severity regulation is a "de minimis hurdle in the disability determination process." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1 988) (per curiam) (citations omitted). Under this view, "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* (citing *Farris v. Sec'y of Health and Human Servs.*, 773 F.2d 85, 90 (6th Cir.1985)). However, the court has also stated that a claim that is "obviously lacking

---

[1] If the ALJ rates the degree of limitation in the first three functional areas as "none" or "mild," and "none" in the fourth area, he will generally conclude that the claimant's impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1521.

medical merit" can be dismissed if it is "totally groundless solely from a medical standpoint." *Id.* at 862-63 (*quoting Farris*, 773 F.2d at 90 n. 1).

Plaintiff argues that her mental impairments clearly meet this more general standard of severity. In support, she relies on a consultative exam performed on October 15, 2002, wherein the examiner, psychologist Tim Brooks, noted that her posture was tense, her verbal responses were limited, her mood was depressed, her insight was limited, and her concentration appeared to be impaired. (Tr. 130-34). She also relies on medical records from Mountain Comprehensive Health Corporation (MCHC) and Kentucky River Community Care, Inc. (KRCC), which reveal diagnoses of anxiety, panic disorder, and depression, for which she was prescribed Effexor and Visatril. (Tr. 172-187).

Although Plaintiff is technically correct in her statement of the law, she fails to appreciate the special procedure an ALJ must follow in evaluating a claimant's mental impairments. The evidence in this case reveals that the ALJ complied with that procedure. For example, after detailing Plaintiff's mental health history, the ALJ rated the degree of functional limitation in each of the four areas outlined above. Specifically, the ALJ found that Plaintiff was mildly limited in her activities of daily living, mild to moderately limited in her social functioning, and moderately limited in her ability to maintain concentration, persistence, and pace, resulting in an inability to complete tasks in a timely manner. (Tr. 21).[2] Based upon these findings, the ALJ properly concluded that Plaintiff's mental impairments were not severe. *See supra* note 1. Under these circumstances, the Court finds no error.

---

[2]These findings were consistent with the mental RFC form completed by Dr. Debra Lilly (Tr. 143-45).

7

Plaintiff's related argument that the ALJ failed to consider the combined effect of all her impairments is also without merit. First, the ALJ made specific findings that: 1) Plaintiff has an impairment or combination of impairments considered "severe" under the regulations, and 2) those impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 24). In addition, prior to making these findings, the ALJ discussed the medical evidence relating to all of Plaintiff's impairments, including those deemed non-severe. (Tr. 20-21). Contrary to Plaintiff's allegations, the ALJ did consider the combination of all her impairments in determining whether she is disabled.

Plaintiff's next argues that the ALJ erred in failing to properly apply the Sixth Circuit's framework for evaluating pain. That framework, which was originally established in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986), requires a claimant complaining of subjective symptoms to first show that there is objective medical evidence of an underlying condition. *Id.* at 853. If objective medical evidence exists, the Court must then examine whether objective evidence confirms the severity of the alleged symptoms or whether the medical condition is of such severity that it can reasonably be expected to produce such symptoms. *Id.*

In assessing Plaintiff's residual functional capacity, the ALJ explicitly stated that he was following the "requirements of 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p." (Tr. 21). These provisions govern the evaluation of subjective medical complaints, and parallel the *Duncan* framework. *See McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Plaintiff contends, however, that the ALJ erred in failing to consider the factors outlined in 20 C.F.R. § 404.1529(c)(3). She also argues that "[t]he evidence of record clearly

establishes that [she] suffers from impairments capable of producing debilitating pain." (Doc. #12, p.11).

As noted by the Commissioner, an ALJ's determinations of credibility are given great weight, and are reviewed for substantial evidence. *Jones v. Comm'r of Social Security*, 336 F.3d 469, 476 (6th Cir. 2003). The evidence in this case reveals that the ALJ considered Plaintiff's own testimony regarding her pain, noting that:

> The claimant testified at the hearing that she has low back jabbing type pain about all the time. She said it radiates to her left hip, made worse by lifting. She reported taking medications, which do not help. She said she has drowsiness as a side-effect from a nerve pill. She said she can lift less than 10 pounds, stand only 10 minutes, sit for 30 minutes, and hardly bend/stoop.

(Tr. 22) (citations omitted). The ALJ also compared Plaintiff's testimony at the hearing to the "Activities of Daily Living" questionnaire that she completed in conjunction with her application for benefits, noting:

> She testified that she does not attend church, or read. She said she only sits or lies down much of the time. However, [she] reported in her Activities of Daily Living questionnaire dated October 4, 2002, that she attends to her personal needs and grooming. She reported that when she is able she does laundry, dusts, shops for food and clothing, watches television, listens to the radio, listens to records and tapes, and goes to church two times per week and only leaves early if the services last a long time.

(Tr. 22) (citations omitted). Based upon this conflicting evidence, which he detailed in his written decision, the ALJ found Plaintiff's allegations "not fully credible." In light of the inconsistency in Plaintiff's allegations, and the lack of objective medical evidence confirming those allegations, the Court will not disturb that determination on appeal.

As a final matter, Plaintiff challenges the adequacy of the ALJ's RFC determination and hypothetical question to the vocational expert. In particular, she claims that ALJ omitted his findings at Step 2, that she is mildly limited in her activities of daily living, mild

to moderately limited in her social functioning, and moderately limited in her ability to maintain concentration, persistence, and pace, resulting in an inability to complete tasks in a timely manner; and as a result, the ALJ's RFC and hypothetical question did not accurately reflect her mental impairments.  Plaintiff's argument is unavailing for two reasons.  First, the ALJ's findings at Step 2 are relevant only to the issues of whether Plaintiff has a severe mental impairment and whether her condition was equivalent to any of the impairments that are listed in Appendix A to the regulations.  Second, the ALJ properly accounted for Plaintiff's deficiencies in sustaining concentration, persistence, and pace by limiting her to simple, routine tasks.  Therefore, the Court concludes that the ALJ's RFC determination accurately reflected all her limitations, and is supported by substantial evidence.  Similarly, the Court finds that the hypothetical question to the vocational expert was appropriate, and her testimony constitutes substantial evidence upon which the ALJ was entitled to rely.

### III.  CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Docs. #11-12) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #13) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 20th day of June, 2006.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\7-05-76-HagyMOO.wpd